In The United States District Court
Eastern District Of Missouri
Eastern Division

| | |
|---|---|
| Tamara O'Reilly, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | )  Cause No. |
| v. | ) |
| | )  Div. |
| Daugherty Systems, Inc., | ) |
| | ) |
| Serve: | )  Jury Trial Demanded |
|    Janet P. Daugherty | ) |
|    Daugherty Systems, Inc. | ) |
|    Three Cityplace Drive | ) |
|    Suite 400 | ) |
|    St. Louis, MO 63141 | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Tamara O'Reilly, for her Complaint against defendant Daugherty Systems, Inc. ("Daugherty"), individually and on behalf of all other similarly situated consultants and their support staff, and sales employees, alleges as follows:

1. Daugherty bills itself as a "premier provider of business and technology solutions." "Ron and Jan Daugherty started Daugherty Business Solutions in 1985 with the goal of helping organizations utilize technology to drive business value." Daugherty has over 500 consultants with offices in St. Louis, Atlanta, Chicago, Dallas, and Minneapolis. According to Defendant, "Our people are our greatest asset. That's why we offer a benefits plan responsive to you and your family. From a competitive salary and generous PTO package to excellent

1

healthcare coverage and ongoing training and professional development, our benefits are just one of the many reasons Daugherty is consistently recognized as a Great Place to Work."  But, when it comes to compensation, Defendant pays its female employees less than its male employees in violation of the Equal Pay Act's requirement that men and women performing similar duties requiring the same skill, effort, and responsibility should be paid equally.

2.  Defendant discriminated against its female consultants and support staff by providing them with lower pay than similarly situated male consultants and support staff even though female consultants and support staff perform similar duties requiring the same skill, effort, and responsibility of comparable male consultants.  Female and similarly situated male consultants and support staff all perform similar job duties and functions requiring the same skill, effort, and responsibilities, and/or were performing under similar working conditions.

3.  Plaintiff Tamara O'Reilly brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, to recover unpaid wages owed to herself and similarly situated female consultants and support staff employed by Defendant.

## Jurisdiction and Venue

4.  The FLSA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question).

5. Venue in this District is proper under 28 U.S.C. § 1391 because Defendant employed Plaintiff in this District, Defendant operates its largest branch office in this District, and a substantial part of the events giving rise to the claim herein occurred in this District.

## Parties

6. Defendant Daugherty is a Missouri corporation that maintains its principal place of business in St. Louis, Missouri.

7. Plaintiff Tamara O'Reilly was employed by Defendant as a consultant from approximately March 2014 to November 30, 2017 at its branch in St. Louis, Missouri, which is located within this Division. O'Reilly's consent to bring this action pursuant to 29 U.S.C. § 216(b) is attached hereto as "Exhibit 1."

## General Allegations

## Defendant's Business

8. Defendant Daugherty bills itself as a "premier provider of business and technology solutions." It has over 700 employees with offices in St. Louis, Atlanta, Chicago, Dallas, and Minneapolis.

9. Defendant employs more than 500 consultants and support staff who all have the same primary job duty: to deliver business and technology solutions to its clients.

10. Defendant's consultants all spend much of their time at client sites delivering business and technology solutions to its clients supported by support staff either in-house or, at times, on client sites.

**Defendant's Pay Practices**

11.  Defendant routinely pays its male consultants and support staff significantly more than its female consultants and support staff for the work required by their similar job duties.

**Defendant's Flawed Pay Practices**

12.  O'Reilly started at Daugherty as a Sr. Manager in March, 2014 making a base of $135,000 with an Incentive Compensation plan of $25,000.  O'Reilly was hired with the the same performance expectations and client goals as her male counterparts acting in the Engagement Manager role and who were paid significantly higher.

13.  O'Reilly began her role as Engagement Manager with Express-Scripts International ("ESI") and was the leader of the workstream for the Federal Program. During this time O'Reilly was able to un-seat Accenture, a competitor, enabling Daugherty to be the preferred partner for the ESI TriCare contract renewal, an accomplishment that exceeded any of what her male counterparts had been able to do. She took over management of the Pharmacy Systems Team from Steve Ambrosius who was paid significantly higher, and grew the team composition over 20% along with introducing Agile practices into the client's processes, which accomplished the Daugherty executive leadership directive to move the company into the Agile practice space. O'Reilly met and exceeded all goals while being the lowest paid Engagement Manager in comparison to her male counterparts, Kevin Herwick, Dan Johnson, and Bill Chapin.

14. In quarter four of 2015, O'Reilly transitioned to RGA where she was in charge of standing up and leading the company's PMO for a high level International Admin project. This role had more responsibilities and expectations than an Engagement Manager role yet her male peers were paid significantly higher with less responsibilities. O'Reilly was a peer to the client VP of Technology and SVP of International Admin, reporting within the client directly to the Global leader of International Administration. During O'Reilly's tenure with RGA she grew the account over 35% along with penetrated areas of RGA, that no other Daugherty leader or sales manager had ever been able do, areas that had never previously utilized Daugherty services all while being paid significantly less than her male peers.

15. Mid-quarter two of 2016 O'Reilly began to meet with John Wirth, an initial meeting facilitated by Thom Emmons as he was aware O'Reilly was contemplating leaving to work for a competitor. John Wirth who had recently taken over the branch location as the Acting Managing Director replacing Brad Butler, began to have discussions with O'Reilly about her role within Daugherty. An immediate result of O'Reilly's meeting with Wirth was an increase in her workload with branch directives, and she was expected to maintain client responsibilities full-time. O'Reilly was given an increase in base compensation to $175,000 and promoted to Principal Consultant; however, she was still compensated significantly less than her male counterparts. O'Reilly's promotion to Principal meant that her annual incentive plan should have been paid

quarterly. Even though O'Reilly was promoted in May, 2016 she was only paid an incentive the last two quarters of 2016.

16. During mid-quarter two and through out 2016, Wirth began to talk and plan for O'Reilly to take on a larger role within the Branch. Wirth discussed with O'Reilly his desire for her to become the Delivery/Quality Manager in the branch, a significant promotion. Wirth began planning her transition out of RGA to return to the branch full-time. During this period in 2016, the Charter account was having critical delivery issues. Wirth directed O'Reilly to support the Charter client leadership team. This was in addition to performing her RGA role and along with the new work from her planned branch role, which was much greater responsibility than her male peers who were being paid significantly higher.

17. When O'Reilly transitioned out of RGA first quarter of 2017, she worked with Wirth and immediately began taking on a more direct branch role supporting delivery, other internal areas, and participating with other branch location leadership. O'Reilly coordinated with Coleen Finnegan, Managing Director of the Chicago and Dallas branches and Monika Mueller, Managing Director of the Atlanta branch to develop an Enterprise Training curriculum for Daugherty consultants. This work and other initiatives were preparing O'Reilly to take on the larger role of Delivery/Quality Manager within the Branch. All three women, O'Reilly, Finnegan and Mueller were paid significantly less than other male leaders in similar roles with Daugherty.

18. Once O'Reilly was promoted to Principal in 2016 she no longer received performance reviews and/or personal development goals. Her base salary and incentive plan were given to her by Wirth with no negotiation and or discussion. In contrast to the discussions and direction of her role within the branch to Delivery/Quality Manager with Wirth in late 2016, Dave LeBlanc, a Sr Consultant was transitioned from the Monsanto account and promoted to Quality Manager for the branch, and, upon information and belief, was paid higher than O'Reilly at this time. There was no communication to O'Reilly from Wirth or posting of this position or any opportunity to apply before Dave LeBlanc was announced as being promoted to this role that had been discussed with O'Reilly since mid-quarter two 2016.

19. O'Reilly had been continuously told by Wirth that she was 'on track' to assume the Delivery Branch Manager role by the end of 2017. In March of that year, a need arose for someone to act in a principal consultative role to the CEO of Envolve, a wholly owned subsidiary of Centene. Wirth directed O'Reilly to take on this high visibility role as it was explained to her that it would have a short duration and not interfere with the planning of O'Reilly's new branch role. O'Reilly expressed her desire to stay within the branch and continue in the direction planned, but told Wirth she would do what's best for the client and Daugherty. During her time with this client, O'Reilly was promoted to Director/Client Partner and her salary increased to $200,000 with a potential $100,000 incentive plan.

7

20. During her longer than planned duration at Envolve, O'Reilly continued to meet with Wirth and expressed to him and Ron Daugherty that she felt her career had atrophied and she wasn't growing. During this time, Wirth hired a new client leader, Drew Davis, to act as the Client Partner for the Centene account. Upon information and belief, Davis was making $250,000 base salary with an incentive plan of $150,000, which was significantly higher compensation paid to O'Reilly acting in the same role and client. When O'Reilly met with Davis to acclimate him to the account and help him assimilate to Daugherty process/culture, they began to discuss the direction of Centene. O'Reilly made a few suggestions on how to best work the account and Davis said, "John Wirth has told me this is my account and I can do whatever I want, so thanks, but no thanks." When O'Reilly met with Wirth about this exchange and to understand what her role was with the account, Wirth denied saying anything like this to Davis. During this period, O'Reilly was working over 55 billable hours at Envolve, while still supporting branch activities and the RGA Account. O'Reilly was working nearly 80 hours a week, week over week and was paid significant less than Drew Davis and other male leaders at Daugherty.

21. O'Reilly left Daugherty, in part, upon belief that Drew Davis, male, was paid $250,000 base salary and $150,000 incentive for doing similar work that she had been performing. In June of 2017, when Bill Theroux left Daugherty, John Wirth informed O'Reilly that Theroux was making significantly more money than her, even though at the time he had less responsibility and was doing similar work as O'Reilly.

8

22. Not only did Wirth admit to O'Reilly that she was compensated significantly less than her male peers for doing similar work, Wirth also during the course of her planned promotion confided to O'Reilly of his intent to make another male leader quit Daugherty by "making his life miserable because he disagreed with him too much," which left O'Reilly uncomfortable with Wirth's unethical business practices.  Steve Ambrosius left the company after O'Reilly shared Wirth's plan to get rid of him.

23. Before O'Reilly left the company,  Ron Daugherty called out O'Reilly in a conversation among her peers, as not knowing "what the hell she was doing" in regards to the RGA account.  The statement was untrue and demeaning to Plaintiff and a complete disregard for her efforts on behalf of the company.  After this unprofessional exchange, O'Reilly, who was working 80 hours week over week went directly to the Human Resource Manager, Karen O'Leary, and resigned.

24. Upon her resignation, Wirth immediately requested O'Reilly stay with Daugherty to support him as he "only had 5-years to retirement."  When O'Reilly resigned, Wirth said he was getting on the elevator and asked to call her later to discuss her resignation.  Wirth never called her, and he had no further contact with O'Reilly.

25. Defendant's pay of its female consultants was a frequent complaint of at least some of Defendant's female consultants, including Plaintiff, yet Defendant continued to pay female consultants much less than its male consultants.

26. The net effect of these practices is that Defendant willfully fails to pay female consultants and support staff equal pay to its male consultants.

## Collective Action Allegations

27. Plaintiff incorporates by reference the allegations from the previous paragraphs of this Complaint alleging common policies and practices resulting in unequal pay earned by similarly situated female consultants and support staff.

28. Plaintiff brings her claims alleging violations of the Equal Pay Act as a collective action under the FLSA as an "opt-in" collective action on behalf of similarly situated consultants pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b) on behalf of all members of the Equal Pay Act Class. The Equal Pay Act Collective Class consists of all current, former, and future female consultants and support staff of a branch who worked at any time for Defendant during the applicable liability period.

29. Plaintiff seeks to represent all of the female consultants and employees described above. The systemic gender discrimination described above has been, and is, continuing in nature.

30. The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

31. Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging Defendant's failure to pay female consultants and support staff the same as male consultants and their support staff for equal work. The number and identity of other plaintiffs yet to

opt-in may be ascertained from Defendant's records, and potential class members may be notified of the pendency of this action via mail or e-mail.

32.   Plaintiff O'Reilly has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is attached as Exhibit 1.

33.   The Equal Pay Act Collective Class includes female consultants and employees, as described above, who (a) were not compensated equally to males who had substantially similar job classifications, job functions, job families, job codes, job titles, job descriptions, and/or job duties based on Defendant's common employment policies and centralized decision-making; (b) were not compensated equally to males who performaed substantially similar work based on Defendant's common employment policies and centralized decision-making; and (c) who were denied assignment, placement, promotion, and/or advancement opportunities that would have resulted in greater compensation in favor of lesser qualified male employees based on Defendant's common employment policies and centralized decision-making.

34.   Counts for violation of the Equal Pay Act may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. §216(b), for all claims asserted by the Plaintiff and any others similarly-situated.

35.   Plaintiff and all of Defendant's consultants, support staff and sales employees are similarly situated in that:

> a. They are accountable for growth of the accounts through delivery of solutions and innovative solution development and sales with executive client leaders;

b. They provide, develop, contribute to Thought Leadership to support maturation/evolution of Daugherty solutions to solve relevant business/industry needs;

c. They are responsible for account maintenance by ensuring that the timely and accurate billing of time, services and materials with consultants and clients occurs;

d. They ensure delivery of services in a consultative fashion which creates value and solution for client needs;

e. They develop and ontribute to Best Practices/Lessons Learned from client engagements to continue to refine/enhance Daugherty service offerings;

f. They develop and contribute to consultant training and skill augmentation;

g. They were subject to the same human resources policies and practices of Defendant.

**Count I: Violation of the Fair Labor Standards Act of 1938, As Amended by the Equal Pay Act of 1963, Denial of Equal Pay for Equal Work, 29 U.S.C. §206, et seq., On Behalf of the Collective Class Representative, In Her Individual and Representative Capacities, and the Equal Pay Act Class against Defendant Daugherty**

36. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as if they were fully set forth in the following paragraphs.

37. This Count is brought on behalf of Plaintiff in her individual and representative capacity, and all members of the Equal Pay Act collective class, including all Equal Pay Act Plaintiffs who "opt-in" to this action.

38. Defendant has discriminated against Plaintiff and the Equal Pay Act Class in Violation of the Fair Labor Standards Act of 1938, As Amended by the Equal Pay Act of 1963, Denial of Equal Pay for Equal Work, 29 U.S.C. §206, et

seq., by providing them with lower pay than similarly situated male employees even though Plaintiff, and all other similarly-situated female consultants, support staff, and sales employees performed similar duties requiring the same skill, effort, and responsibility of comparable male consultants, support staff, and sales employees, and are or were performed under similar working conditions.

39. Defendant so discriminated by subjecting the Collective Class Representative and the Equal Pay Act Plaintiffs to common discriminatory pay policies, including discriminatory salaries, bonuses, and other compensation incentives, and discriminatory assignments, denials of promotions, and other advancement opportunities that would result in higher compensation, and other forms of discrimination in violation of the Equal Pay Act.

40. Plaintiff and similarly situated male employees all performed similar job duties and functions requiring the same skill, effort, and responsibilities, and are/or were performing under similar working conditions.

41. The difference in pay between male and female employees was not due to seniority, merit, quantity of quality of production, or a factor other than sex.

42. Defendant caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender, in violation of the Equal Pay Act.

43. The foregoing conduct constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. § 255.  Since Defendant has willfully violated

the Equal Pay Act, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

44.   As a result of Defendant's conduct, Plaintiff suffered and continues to suffer harm including but not limited to:  lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

45.   By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of the Equal Pay Act  including liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216.

## Demand for Jury Trial

46.   Plaintiffs hereby request a trial by jury of all issues triable by jury.

## Prayer for Relief on Collective Action

47.   The Class Representative, on her behalf and on behalf of the Equal Pay Act Collective Class, as defined above, prays that this Court:

A.   Designate this action as a collective action on behalf of the proposed collective action plaintiffs and

(i)   promptly issue pursuant to  29 U.S.C. § 216(b) to all similarly-situated members of the Equal Pay Act Collective Action Opt-In Class, which (a) apprises them of the pendency of this action, and (b) permits them to assert timely Equal Pay Act claims in this action by filing individual Consent to Join forms pursuant to  29 U.S.C. § 216(b); and

(ii)  toll the statute of limitations on the claims of all members of the Equal Pay Act Collective Action Opt-In Class from the date the original complaint was filed until the Class members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their rights to opt-in as Plaintiffs;

B.  Judgment against Defendant finding it discriminated against female Consultants and Support Staff under the EPA by causing, contributing to, or causing the continuation of, the wage rate discrimination based on sex in violation of the EPA and that Defendant knew or showed reckless disregard for the fact that its conduct was in violation of the EPA;

C.  Judgment against Defendant for Plaintiff and those similarly situated for unequal wages and lost benefits;

D.  An amount equal to their damages as liquidated damages;

E.  A finding that Defendant's violations of the EPA are willful;

F.  All costs and attorneys' fees incurred prosecuting this claim;

G.  An award of prejudgment interest (to the extent liquidated damages are not awarded);

H.  Leave to add additional plaintiffs by motion, the filing of consent forms, or any other method approved by the Court;

I.  Leave to amend to add additional state law claims; and

J.  All further relief as the Court deems just and equitable.

Respectfully submitted,

Ghio Law Firm LLC

*/s/ Matthew J. Ghio*

By: _____
Matthew J. Ghio              #MO44799
3115 S. Grand, Suite 100
St. Louis, Missouri 63118
(314) 707-5853
(314) 732-1404 (fax)
matt@ghioemploymentlaw.com