**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| TAMARA O'REILLY, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) Case No. 4:18-cv-01283-SRC |
| | ) |
| DAUGHERTY SYSTEMS, INC., | ) |
| | ) |
| Defendant(s). | ) |

**Memorandum and Order**

Tamara O'Reilly, the sole remaining plaintiff following the decertification of this collective action, contends her former employer, Daugherty Systems, paid her less than her comparable male coworkers in violation of the Equal Pay Act. Daugherty maintains that O'Reilly cannot establish its liability because her alleged comparators were either paid less than she, did not perform equal work, or the pay disparity is justified by a legitimate factor other than sex. For those reasons, Daugherty seeks summary judgment against O'Reilly.

**I.     Background**

The Court provided most of the relevant background in its order on Daugherty's Motion to Decertify the Conditional Class, Doc. 140, and therefore will not restate it in full here. After moving to decertify the conditional class, Doc. 97, Daugherty also filed a motion for summary judgment. Doc. 113. Plaintiffs filed an opposition, Doc. 126, and Daugherty filed its reply, Doc. 127, as well as a motion to strike portions of Plaintiffs' declarations filed in support of their Response to Statement of Materials Facts, Doc. 129. With Plaintiffs having filed an opposition to Daugherty's Motion to Strike, Doc. 132, and Daugherty filing its reply, Doc. 134, both the motion for summary judgment and motion to strike are ripe for review.

The Court granted Daugherty's Motion to Decertify the Conditional Class, Doc. 140, and dismissed all plaintiffs except for Tamara O'Reilly, thereby mooting Daugherty's Motion for Summary Judgment as to any other plaintiff.  Accordingly, the Court here addresses only whether Daugherty is entitled to judgment as a matter of law on O'Reilly's individual claim under the Equal Pay Act, 29 U.S.C. § 206(d).

The Court similarly denies [129] Daugherty's Motion to Strike as moot because Daugherty seeks to strike the declarations of plaintiffs who have been dismissed and the portion of O'Reilly's declaration Daugherty seeks to strike simply has no bearing on the Court's ruling on Daugherty's Motion for Summary Judgment.

**II.    Facts**

Before stating the uncontroverted facts established by the summary judgment record, the Court notes the basic requirements necessary to establish an Equal Pay Act claim as these requirements impact the Court's presentation of the undisputed facts.  As explained in additional detail in Section IV.A, O'Reilly "must first establish a prima facie case that women were paid less than men in the same establishment for equal work requiring equal skill, effort, and responsibility and performed under similar working conditions." *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011) (citing *Hutchins v. Int'l Bhd. of Teamsters,* 177 F.3d 1076, 1080–81 (8th Cir. 1999)).  O'Reilly must therefore identify male Daugherty employees performing equal work that were paid more than she.

O'Reilly identified the following Daugherty employees as male comparators: William Theroux, Drew Davis, Shawn Waldrop, Thomas Emmons, Juan Burriel, Bill Chapin, Kevin Herweck, Jim Drewes, Steve Ambrosius, Tim Craig, Benjamin Hanks, and Drew Marco.  Doc.

2

115 at ¶ 128; Doc. 115-44 at p. 3.[1]  Although O'Reilly focuses solely on the facts related to Drew Davis in arguing that she has established a prima facie case, for purposes of completeness, the Court states the applicable job title, responsibility, and salary history of O'Reilly and her alleged male comparators to the extent supported by the summary judgment record.

Before stating the undisputed material facts, the Court notes that in the statement of unconverted material facts, Doc. 115, Daugherty only provided salary for some alleged comparators, only provided titles for others, and provided both for others.  Therefore, the fact that the undisputed facts as stated below do not state the salaries and job titles or responsibilities of each comparator stems from omissions by the parties.  Accordingly, the summary judgment record established the following as undisputed facts.

### A. Uncontroverted material facts

#### 1. O'Reilly's titles and roles and salary at Daugherty

O'Reilly held the following titles and roles at Daugherty: 1) Senior Manager, Program Manager from March 31, 2014 to April 24, 2016; 2) Principal, Program Manager from April 25, 2016 to June 19, 2016; 3) Senior Principal, Program Manager from June 20, 2016 to January 1, 2017; and 4) Director, Client Partner from January 1, 2017 to November 30, 2017.  Doc. 115 at ¶¶ 1–4.  The role of Senior Manager has fewer responsibilities and duties within Daugherty's organization than the role of Senior Principal.  *Id*. at ¶ 7.  O'Reilly never served as a line-of-service leader.  *Id*. at ¶ 5.

---

[1] In its Statement of Uncontroverted Material Facts, Daugherty did not include Ben Hanks and Drew Marco among O'Reilly's alleged comparators.  Doc. 115 at ¶ 128.  However, paragraph 158 cites O'Reilly's response to an interrogatory from Daugherty asking her to "[i]dentify each individual who performed the same or similar jobs" as she.  Doc. 111-44 at p. 3. In her response, O'Reilly identifies Hanks and Marco.  *Id.*  Moreover, in both its memorandum in support of its motion for summary judgment and its reply, Daugherty includes Hanks and Marco among O'Reilly's alleged comparators.  *See* Docs. 114 at pp. 8–11, Doc. 127 at p. 5.  With O'Reilly raising no objection to Daugherty casting Hanks and Marco as male comparators, the Court finds it appropriate to treat them as such.

3

In December 2015, O'Reilly served strictly in a delivery role, and did not have primary responsibility for sales. *Id*. at ¶ 8. O'Reilly received a promotion to Client Partner and had no prior experience as a Client Partner. *Id*. at ¶ 9. Notably, O'Reilly did not dispute Daugherty's facts that O'Reilly did not have a particularly strong depth in the domain of data and analytics, master data management, and data warehousing, or that she lacked the competency necessary to perform the duties consistent with those delivery roles in the Software Architecture and Engineering line of service, which is the line of service for the Information Architect delivery role. *Id*. at ¶¶ 10, 454.

O'Reilly's base salary at Daugherty progressed as follows: 1) $135,000.01 from September 29, 2014 to April 26, 2015; 2) $137,500 from April 27, 2015 to April 24, 2016; 3) $142,999.97 from April 25, 2016 to June 19, 2016; and 4) $175,000.18 from June 20, 2016 to January 1, 2017. *Id*. at ¶¶ 79–82.

## 2. Relevant Daugherty male employees

### a. William Theroux

William Theroux held the following titles and roles at Daugherty: 1) Principal, Program Manager from April 28, 2014 to March 13, 2016; and 2) Senior Principal, Program Manager from October 10, 2016 to June 20, 2017. *Id*. at ¶¶ 149–150. He also served as a line-of-service leader and served as O'Reilly's Team Manager. *Id*. at ¶¶ 151–152.

### b. Drew Davis

Drew Davis held the title and role of Director, Client Partner from May 8, 2017 to March 1, 2018. *Id*. at ¶ 155. At the time of his hiring, Davis brought a considerable amount of experience from his past work at Ernst & Young and IBM. *Id*. at ¶ 156. Davis brought a

4

particularly strong depth in the domain of data and analytics, master data management, and data warehousing.  *Id*. at ¶ 157.

### c. Shawn Waldrop

Shawn Waldrop held the title and role of Principal, Project Manager II from March 2, 2015 to September 20, 2016.  *Id*. at ¶ 158.  He also was responsible for building client proposals to gain new business.  *Id*. at ¶ 159.

### d. Thomas Emmons

Thomas Emmons held the following titles and roles at Daugherty: 1) Senior Principal, Program Manager from January 6, 2014 to December 20, 2015; and 2) Senior Principal, Account Manager from December 21, 2015 to September 26, 2016.  *Id*. at ¶¶ 161–162.  In his Account Manager delivery role, Emmons was responsible for sales, growing and acquiring new business for Daugherty, while also having the versatility to help with delivery.  *Id*. at ¶ 163.

### e. Ben Hanks

Ben Hanks held the following titles and roles at Daugherty: 1) Consultant, Project Manager I from September 29, 2014 to April 26, 2015; 2) Manager, Project Manager II from April 27, 2015 to April 24, 2016; 3) Senior Manager, Program Manager from April 25, 2016 to October 10, 2016; and 4) Principal, Program Manager from October 10, 2016 to May 5, 2017.  *Id*. at ¶¶ 164–167.  Hanks also served as a Client Leader.  *Id*. at ¶ 168.

Hanks's base salary at Daugherty progressed as follows: 1) $112,000.10 from September 29, 2014 to April 26, 2015; 2) $120,000.19 from April 27, 2015 to April 24, 2016; 3) $125,999.95 from April 25, 2016 to October 9, 2016; 4) $135,000.11 from October 10, 2016 to November 6, 2016; and 5) $145,000.13 from November 7, 2016 to May 5, 2017.  *Id*. at ¶¶ 388–392.

### f.      Drew Marco

Drew Marco held the title and role of Senior Manager, Senior Information Architect from April 27, 2015 to April 23, 2017.  *Id*. at ¶ 170.

Marco's base salary at Daugherty progressed as follows: 1) $140,000.02 from April 25, 2016 to April 23, 2017; and 2) $155,000.14 from April 24, 2017 to January 11, 2019.  *Id*. at ¶¶ at 393–94.

### g.      Juan Burriel

Juan Burriel's base salary at Daugherty progressed as follows: 1) $131,500.09 from April 28, 2014 to April 26, 2015; 2) $135.000.11 from April 27, 2015 to April 24, 2016; 3) $140,000.02 from April 25, 2016 to April 23, 2017; and 4) $145.000.13 from April 24, 2017 to November 10, 2017.  *Id*. at ¶¶ 395–398.

### h.      Bill Chapin

Bill Chapin's base salary at Daugherty progressed as follows: 1) $130,500.03 from April 28, 2014 to April 26, 2015; 2) $135,000.11 from April 27, 2015 to October 9, 2016; and 3) $142,500.18 from October 10, 2016 to June 3, 2018.  *Id*. at ¶¶ 399–401.

### i.      Jim Drewes

Jim Drewes's base salary at Daugherty progressed as follows: 1) $120.000.19 from April 28, 2014 to April 26, 2015; 2) $124,500.06 from April 27, 2015 to April 24, 2016; 3) $131,999.92 from April 25, 2016 to November 7, 2016; 4) $140.000.02 from November 8, 2016 to April 24, 2017; and 5) $155,000.14 from April 25, 2017 to April 22, 2018.  *Id*. at ¶¶ 402–406.

### j.      Steve Ambrosius

Stephen Ambrosius held the title and role of Principal, Senior Business Architect from May 16, 2014 to October 27, 2016.  *Id*. at ¶ 179.

### k. Tim Craig

While working at Daugherty, Tim Craig had a base salary of $145,000.12 from June 20, 2016 to August 27, 2018. *Id.* at ¶ 407.

### l. Kevin Herweck

Kevin Herweck held the following titles and roles at Daugherty during the time in question: 1) Senior Manager, Program Manager from May 26, 2014 to April 24, 2016; and 2) Principal, Program Manager from April 25, 2016 to September 11, 2016. *Id.* at ¶¶ 174–175. Herweck served on an engagement with Daugherty's Enterprise and Strategic Planning team, where he was heavily involved in establishing a multi-year strategy and roadmap for Daugherty's client Anheuser-Busch. *Id.* at ¶ 176. In this engagement with the Enterprise and Strategic Planning team, Herweck performed as a Strategic Management Consultant and Business Advisor. *Id.* at ¶ 177.

## III. Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  Self-serving, conclusory statements without support are insufficient to defeat summary judgment.  *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### IV.     Discussion

#### A.     Governing Law

The EPA prohibits employers from pay discrimination on the basis of sex.  29 U.S.C. § 206(d).  A plaintiff asserting an unequal pay claim under the EPA "must first establish a prima facie case that women were paid less than men in the same establishment for equal work requiring equal skill, effort, and responsibility and performed under similar working conditions.  If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to prove one of four statutory affirmative defenses."  *Price*, 664 F.3d at 1191 (citing *Hutchins,* 177 F.3d at 1080–81).  Under the EPA's statutory defenses, an employer is not liable for paying one sex more than another for equal work if the employer can provide that any wage differential is explained by "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex[.]"  29 U.S.C. § 206(d)(1); *see also Price*, 664 F.3d at 1191.  In an EPA case, "a defendant cannot escape liability merely by articulating a legitimate non-discriminatory reason for the employment action. . . . [it] must prove that the pay differential was based on a factor other than sex."  *Price*, 664 F.3d at 1991 (quoting *Taylor v. White,* 321 F.3d 710, 716 (8th Cir. 2003))

8

(alterations in original).  "A differential that is based on education or experience is a factor other than sex recognized by the Equal Pay Act." *Hutchins*, 177 F.3d at 1081 (citations omitted).

### B.   O'Reilly's prima facie case

As noted, O'Reilly alleges that she performed the same or similar duties as the comparators listed above.  Doc. 115 at ¶ 128; Doc. 115-44 at p. 3.  In its motion for summary judgment, Daugherty argues that the evidence supports that it paid O'Reilly more than Hanks, Marco, Burriel, Chapin, Drewes, and Craig.  Doc. 114 at pp. 9–11.  Daugherty also argues that Theroux, Emmons, Waldrop, Marco, and Ambrosius were not "individuals performing equal work" as required by the EPA.  Doc. 114 at pp. 16–20.

In her opposition, O'Reilly does not address whether Daugherty paid Hanks, Marco, Burriel, Chapin, Drewes, and Craig less than she, nor does she address whether Theroux, Emmons, Waldrop, Marco, and Ambrosius constituted "individuals performing equal work" as required by the EPA.  Doc. 126.  Instead, she states that that Daugherty paid her less than Drew Davis for substantially equal work, *id.* at p. 9, and argues that she established a prima facie case because she identified at least one male comparator that Daugherty paid more than her.  *Id*. at pp. 8–9 (citing *Hutchins*, 177 F.3d at 1081).  O'Reilly is mistaken.

In *Hutchins*, the plaintiff identified twelve male employees who were paid higher salaries, but the evidence also supported that the plaintiff's starting salary was the same as eight male organizers and that five female organizers were paid higher starting salaries than she was paid.  177 F.3d at 1081.  Despite acknowledging that the plaintiff "offer[ed] no rationale for asking the court to focus on only the twelve male employees she selected and disregard the eight male organizers whose starting salaries were the same as hers[,]" the Eighth Circuit could not

9

"say that the district court erred in finding that [the plaintiff] established a prima case of pay discrimination[]" under the EPA, without providing further explanation. *Id*.

The Eighth Circuit has found that a plaintiff failed to prove her prima facie Title VII-wage-discrimination claim because "[t]he evidence establishes that throughout her employment in the tool room she was paid the same as, or more than, at least some male tool makers in the tool room." *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 684 (8th Cir. 2001); *see also Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 719 (8th Cir. 2000) ("The Eighth Circuit has held that Equal Pay Act, 29 U.S.C. § 206(d) (1994), standards apply to Title VII claims of 'unequal pay for equal work.'" (citation omitted)). Similarly, in *Euerle–Wehle v. United Parcel Service, Inc.*, 181 F.3d 898, 901 (8th Cir. 1999), the Eighth Circuit agreed with the district court that the plaintiff, a mail-package-center manager, failed to establish a prima facie equal-pay case because, in part, she was paid higher than 16 of the 34 mail package managers.

The seeming inconsistency between these decisions led some district courts to evaluate which decision to follow. *See Hennick v. Schwans Sales Enterprises, Inc.*, 168 F. Supp. 2d 938, 947–950 (N.D. Iowa 2001); *see also Fagen v. Iowa,* 301 F. Supp. 2d 997, 1003–04 (S.D. Iowa 2004). As stated in *Hennick*, both *Sowell* and *Euerle-Wehle* "stand for the proposition that a plaintiff cannot prevail on a gender-based wage-discrimination claim where she is paid the same as, or more than, 'at least some male' comparators." *Hennick*, 168 F. Supp. 2d at 947. In contrast, "the rule of *Hutchins* is that the plaintiff *can* make out a *prima facie* case, if she shows that 'at least some males made more' for 'equal work.'" *Id*. at 948. Both *Hennick* and *Fagen* determined that *Hutchins* had the better approach, emphasizing that adopting *Sowell* and *Euerle-Wehle* "would lead to the perverse result that a female employee could not make out a case of wage discrimination even where she was one of ten females paid half as much as nine males for

10

equal work, so long as a tenth male made the same as or less than the female workers." *Fagen*, 301 F. Supp. 2d at 1004 (citing *Hennick*, 168 F. Supp. 2d at 950).

The Court need not address whether *Hennick* and *Fagen* reached the correct determination because the Eighth Circuit has continued to reach decisions in line with *Sowell* and *Euerle–Wehle* and continues to favorably cite *Sowell*. For example, in *Grabovac v. Allstate Ins. Co.*, 426 F.3d 951, 956 (8th Cir. 2005), the court affirmed the lower court's finding that the plaintiff failed to establish a prima facie EPA case because "[t]he evidence . . . show[ed] that out of the five [marketing business consultants] in the west central region, four of whom were male, [the plaintiff] had the second highest salary and bonus for 2001." Additionally, in *Price*, the court cited *Sowell* as an example of a plaintiff failing to establish a prima facie case. 664 F.3d at 1193.

Moreover, following *Grabovac* and *Price*, district courts in this circuit have repeatedly found that plaintiffs fail to establish a prima facie case when the evidence supports that the number of males paid the same or less than the plaintiff significantly outnumbers the number of males paid more. *See e.g.*, *Evans v. Autozone Stores, Inc.*, No. 05-CV-1086, 2008 WL 697752, at *10 (W.D. Ark. Mar. 13, 2008) (finding that the plaintiff failed to establish prima facie case when evidence demonstrated that out of four male employees working in the same store, the plaintiff made more than three of them (citing *Grabovac*, 426 F.3d 951)); *Garrard v. First Step, Inc.*, No. 1:14-CV-1033, 2015 WL 2248217, at *2 (W.D. Ark. May 13, 2015) (finding that the plaintiff failed to establish prima facie case when the defendant employed 55 male van drivers in five locations and paid 27 drivers the same as plaintiff, and one less than plaintiff (citing *Sowell*, 251 F.3d at 684)); *Peniska v. CJ Foods Inc.*, No. 8:19-CV-277, 2021 WL 24729 (D. Neb. Jan. 4, 2021) (finding that the plaintiff failed to establish prima facie case when evidence demonstrated

11

that the defendant paid plaintiff a higher hourly rate than some of her male coworkers in same role (citing *Sowell*, 251 F.3d at 684)).

To prove her prima facie case, O'Reilly points to a single male Daugherty employee, Drew Davis, that Daugherty paid more for equal work. However, O'Reilly admitted that 10 male employees were either paid less than she or did not perform equal work. Given that alleged comparators that either were paid less did or did not perform equal work outnumber by a ten-to-one margin the lone alleged comparator who was paid more for equal work, the Court concludes that O'Reilly fails to establish a prima facie EPA claim.

Additionally, even if courts ruling on Equal Pay Act claims generally should reconcile an apparent inconsistency between *Hutchins*, *Sowell*, and *Euerle–Wehle*, the Court need not do so here because the present case is distinguishable from *Hutchins*. The issue with respect to the prima facie case in *Hutchins* involved whether the Court should consider not just the male comparators proffered by the plaintiff, but the eight other male employees paid less than the plaintiff who held the same title. Regardless of whether the Eighth Circuit considered the other eight male employees in evaluating whether the district court properly found the plaintiff established her prima facie case, the plaintiff in *Hutchins* at least identified comparators that were paid more than her and did not identify any that were paid the same or less. In contrast, only one of O'Reilly's identified male comparators was paid more than she, and 10 others were either paid less or did not perform similar jobs. Thus, this case does not raise the issue in *Hutchins* of whether the plaintiff can selectively choose male comparators to establish a prima facie because not even the comparators O'Reilly identified can establish her prima facie case.

With O'Reilly failing to establish her prima facie case, the Court need not address whether any pay discrepancy can be justified by the EPA's statutory defenses. Accordingly, the Court grants summary judgment in favor of Daugherty.

## V. Conclusion

The Court grants Daugherty's [113] Motion for Summary Judgment. A separate order of judgment will accompany this order.

So Ordered this 30th day of September 2021.

*SL R. CQ*

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**